# Illinois Official Reports

## Appellate Court

---

*In re Estate of DeMarzo*, 2015 IL App (1st) 141766

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF PATRICIA DeMARZO, Deceased (James P. DeMarzo, Plaintiff-Appellant v. Harvey L. Harris, Individually and as Executor of the Estate of Patricia DeMarzo, Deceased, Sierra Club, Medallion Rottweiler Club, Colonial Rottweiler Club, and Lisa Madigan, Illinois Attorney General, Defendants-Appellees). |
| District & No. | First District, Third Division<br>Docket No. 1-14-1766 |
| Filed | August 19, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-P-4809; the Hon. Susan M. Coleman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Eduard Adam Glavinskas, of Porikos, Rodes & Glavinskas, of Chicago, for appellant.<br><br>Sherwin H. Zaban, Darryl Rosenzweig, and Alan Jacobs, all of Jacobs & Rosenzweig, of Chicago, for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1      Patricia DeMarzo died in 2009, leaving a will that bequeathed a majority of her estate to defendant Harvey Harris, who at various times between 2002 and 2007 was Patricia's tenant, attorney, and boyfriend. James DeMarzo, Patricia's brother and only legal heir, filed a petition to contest the will, asserting it violated public policy because Harris, while acting as Patricia's lawyer, wrote the will. This claim was based on the deposition testimony of Patricia's friend, James Panagakis, who contended that Patricia told him, in Harris' presence, that Harris knew what was in the will because he wrote it. Alternatively, DeMarzo alleged Harris exercised undue influence over Patricia in deciding how her estate would be distributed. DeMarzo asked the trial court to declare the will invalid and asked for $5 million in punitive damages, as well as attorney fees and cost.

¶ 2      Both parties filed motions for summary judgment. Before ruling on the motions, the trial court granted Harris' motion to exclude Panagakis' testimony regarding his conversation with Patricia on hearsay grounds. The trial court then granted Harris' motion for summary judgment, denied DeMarzo's motion, and dismissed the petition with prejudice. DeMarzo contends the trial court erred in: (1) barring as hearsay the conversation between Patricia and Panagakis about who prepared the will; and (2) denying his motion for partial summary judgment and granting Harris' motion for summary judgment.

¶ 3      We affirm on the basis that: (1) the conversation between Patricia and Panagakis constituted hearsay without an exception and, thus, was barred from admission; and (2) summary judgment in Harris' favor was appropriate where no evidence was introduced showing that Harris wrote Patricia's will or unduly influenced her.

¶ 4                                                                  BACKGROUND

¶ 5      Patricia DeMarzo, a resident of Northbrook, Illinois, signed her last will and testament on February 28, 2004. At that time, she was romantically involved with defendant Harvey Harris who also rented one of Patricia's homes in Northbrook. Patricia's will named Harris as the executor and, under article two, bequeathed to Harris: all of her dogs, two parcels of real property located in Northbrook, and all of her personal and household effects not otherwise disposed of. Patricia bequeathed one half of her residuary estate to Harris, with the other half going to various charities. Patricia bequeathed $3,000 to her brother, James DeMarzo, from life insurance policies, if any, and provided that if those policies do not exist, DeMarzo would not receive anything under the will. DeMarzo lives in Florida and was in and out of the Florida Department of Corrections between 1989 and 2008.

¶ 6      Harris, who was a licensed attorney in Illinois, contends other than helping Patricia change her name in 2002, after her divorce, he provided her no legal services. He acknowledges that in 2003, Patricia asked him whether her entire estate would go to her brother if she died without a will. He said he confirmed that it would go to DeMarzo as her sole surviving heir, and she said that she did not want that to happen. He also acknowledges that at Patricia's request, he asked an acquaintance to notarize the will and went with her to get the will notarized. Harris claims, however, that he played no role in drafting Patricia's will or advising her how to draft it. Harris' romantic relationship with Patricia ended in 2005, when he moved to Montana, where he currently resides. He asserts that in 2007, Patricia mailed the will to him for safekeeping.

¶ 7    Patricia died on July 1, 2009. Later that month, the trial court entered an order admitting the will to probate and appointing Harris as the executor of Patricia's estate. The court also entered an order finding DeMarzo as Patricia's sole heir. On September 10, 2009, DeMarzo petitioned for formal proof of will. At the hearing on the petition, Harris testified that Patricia told him she prepared the will. Later, during that hearing, he testified that she did not tell him she prepared it but that he assumed she had. After the hearing, the admission of Patricia's will was confirmed.

¶ 8    On January 29, 2010, DeMarzo filed a petition to contest the will's validity, contending the will was: (1) void as against public policy because Harris prepared the will while acting as Patricia's attorney; and (2) not Patricia's free and voluntary act but instead, the result of Harris' undue influence. On March 23, 2010, Harris filed a motion to dismiss DeMarzo's petition, which the trial court denied.

¶ 9    The parties conducted discovery, including depositions of Harris and Panagakis, a friend of Patricia's. In his deposition, Panagakis asserted that in August or September 2004, Patricia invited him to a bar in Northbrook to meet Harris. Panagakis said that while he, Patricia, and Harris were sitting at the bar, with Patricia between the two men, Patricia told him that Harris knew what was in her will because he wrote it. Panagakis said he looked over at Harris, who gave him a "sheepish grin" and looked away. Panagakis said that he did not know why Harris gave him that look and did not know if Harris was smiling because he wrote the will or because he was "getting everything." Panagakis said that in the years before she died, Patricia told him "hundreds" of times that Harris drafted her will and that she wanted to change it. He also said that Patricia told him that "if she left anything to [her brother] he'd piss it all away on drugs."

¶ 10    In his deposition, Harris denied that he prepared Patricia's will and again stated both that Patricia told him that she drafted the will and he presumed she had prepared it.

¶ 11    The parties filed cross-motions for summary judgment. Before the hearing on the summary judgment motions, Harris filed a motion for a preliminary ruling on the admissibility of Panagakis' testimony that Patricia told him that Harris wrote the will and Harris' silence in response. Harris contended that Patricia's alleged statement would be inadmissible hearsay evidence, and that his nonresponse does not constitute an admission by silence. The trial court agreed and entered an order finding that the conversation between Patricia and Panagakis was hearsay and not subject to the silence by admission exception.

¶ 12    On November 19, 2013, the trial court granted Harris' motion for summary judgment, denied DeMarzo's motion for partial summary judgment, and dismissed the case with prejudice. The trial court denied DeMarzo's motion to reconsider.

¶ 13    DeMarzo contends that the trial court erred in: (1) barring the admission of the conversation between Patricia and Panagakis regarding who prepared the will; (2) denying DeMarzo's motion for partial summary judgment; and (3) granting Harris' motion for summary judgment.

¶ 14                                ANALYSIS

¶ 15    Before turning to the merits, we must address issues with DeMarzo's brief and the record on appeal. Although DeMarzo appeals from three trial court orders representing three separate hearings, the record on appeal does not contain transcripts from any of those

proceedings as required by Illinois Supreme Court Rule 321 (eff. Feb. 1, 1994) and Rule 323 (eff. Dec. 13, 2005). Nor has DeMarzo filed an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided for in Rule 323(c) or (d). The record is also deficient in that it lacks a copy of the motion for partial summary judgment and only contains the exhibits to the motion. Further, although DeMarzo's brief includes an appendix with a table of contents as required by Illinois Supreme Court Rule 342 (eff. Jan. 1, 2005), the table of contents is inaccurate in several places. For instance, the table of contents lists the motion for partial summary judgment, which is not in the record, and the petition to contest the will, which is not where the table of contents indicates, but instead can be found as part of the exhibits to his motion for partial summary judgment.

¶ 16    We caution that the rules of procedure for appellate briefs must be obeyed; they are not convenient suggestions or annoyances to be neglected at will. It is within our discretion to strike a brief and dismiss an appeal for failure to comply with the rules. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10. The appellant has the burden of providing a sufficient record of the trial proceedings to support his or her claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of a sufficient record, we must presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Id.* Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.* at 392. We note, however, that striking a brief or dismissing an appeal for failure to comply with the rules is a bitter sanction for a represented party because it harshly penalizes the client for his or her lawyer's noncompliance. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). The record is not voluminous and the issues straightforward. Accordingly, and with these caveats in mind, we will consider the merits of the appeal. See *People v. Thomas*, 364 Ill. App. 3d 91, 97 (2006).

¶ 17                                                        Hearsay

¶ 18    DeMarzo first contends the trial court erred in barring on hearsay grounds Panagakis' testimony that Patricia told him, in Harris' presence, that Harris prepared her will. DeMarzo contends that statement qualifies as an exception to the hearsay rule and that Harris' failure to respond to Patricia's statement constitutes an admission by silence. Harris claims not to recall a discussion of Patricia's will on the date alleged and also asserts the statement constitutes hearsay without an exception.

¶ 19    As every lawyer knows, hearsay evidence consists of an out-of-court statement offered to prove the truth of the matter asserted and, due to its lack of reliability, is generally inadmissible unless it satisfies an exception. *Dohrmann v. Swaney*, 2014 IL App (1st) 131524, ¶ 43. The trial court has discretion to determine whether a statement, in fact, is hearsay and, if so, whether the statement falls within an exception to hearsay. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 350 (2010).

¶ 20    Evidence offered to show a person's knowledge or awareness of a circumstance and not to establish the truth of the circumstance is not hearsay. *Holland v. Schwan's Home Services, Inc.*, 2013 IL App (5th) 110560. DeMarzo contends Panagakis' deposition testimony regarding Patricia's statement that Harvey prepared her will is not hearsay because it is being offered to show Harvey's knowledge and awareness that he prepared the will. We disagree. First, *Holland*, on which DeMarzo relies, is distinguishable. There, the plaintiff, who injured his back at work, sued his former employer alleging his former employer terminated him in

retaliation for exercising his rights under the Illinois Workers' Compensation Act. *Id.* ¶ 1 (citing 820 ILCS 305/1 to 30 (West 2008)). The defendant claimed as hearsay the claims file maintained by a third party workers compensation administrator, which contained statements about the plaintiff's condition and treatment that the administrator made to defendant's employees and vice versa. *Id.* ¶ 183. The appellate court held that the circuit court correctly admitted the file to establish only that the administrator made the statements, not as proof of any matter she asserted in those statements about defendant's condition and ruled the statements relevant to show the defendant's knowledge of those communications. *Id*. ¶ 186.

¶ 21    Conversely, DeMarzo offers the conversation between Patricia and Panagakis only to show the truth of the statement Patricia made, *i.e.*, that Harris wrote the will for Patricia, and not to show that Harris knew about the conversation between Patricia and Panagakis. Thus, this testimony fits squarely into the definition of inadmissible hearsay.

¶ 22    DeMarzo also contends Patricia's statement to Panagakis falls under an exception for statements consistent with the terms of a will, citing *In re Will of Hamilton*, 408 Ill. 187 (1951). In the *Hamilton* case, our supreme court ruled that statements made during a testator's life that are contrary to the terms of the testator's will are inadmissible to invalidate the will. In his brief DeMarzo asserts "presumably, statements which are consistent with the terms of the will would be admissible." But, DeMarzo's presumption does not accord with any case law. Moreover, even if DeMarzo's presumption were true, it would not aid him because Patricia's purported statement that Harris knew he was getting everything as the will's author conflicts with the terms of the will. First, although Harris did get a significant part of Patricia's estate, he did not get "everything," as she left half of her residuary estate to various charities. Further, the statement that Harris wrote the will is inconsistent with the will because nothing in the will indicates who prepared it for Patricia. Thus, nothing in the facts or the law support a finding that Patricia's statement to Panagakis comes in under a hearsay exception.

¶ 23                                    Admission by Silence
¶ 24    DeMarzo alternatively argues that Harris' failure to deny that he prepared the will after Patricia told Panagakis that he had constitutes an admission by silence.

¶ 25    To qualify as an admission by silence or an implied admission, it is essential that the person heard the incriminating statement and that it was made under circumstances which allowed an opportunity for the person to reply and where a person similarly situated would ordinarily have denied the accusation. *People v. Cihak*, 169 Ill. App. 3d 606, 611 (1988). According to Panagakis' deposition testimony, he and Patricia were talking about fly fishing and he "jokingly" said something to Patricia about being careful if she was with someone inexperienced and Patricia "jokingly" replied "you know, if I die Harvey gets everything. *** She said, Harvey knows because he did the will." Panagakis said he looked at Harris, who had a "sheepish grin" and looked away.

¶ 26    Panagakis never said Harris heard Patricia's comment. (Harris says he does not recall the conversation.) Panagakis stated that the three of them were seated at a bar, with Patricia in the middle and each man to either side of her. Panagakis further stated that Patricia turned toward him when speaking to him and, thus, had her back to Harris. And, Panagakis acknowledged he could not decipher the meaning behind what he described as Harris' "sheepish grin." If indeed Harris heard the conversation, it is equally likely that he reacted to

her saying he was "getting everything" as it was to her assertion the he wrote the will. Absent evidence that Harris heard Patricia's statement and said nothing, it cannot qualify as an admission by silence.

¶ 27                                                    Summary Judgment

¶ 28       DeMarzo next contends the trial court erred in denying his motion for partial summary judgment and in granting summary judgment in favor of Harris. Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). We review the trial court's decision to grant or deny a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 29       The purpose of summary judgment is to determine whether triable issues of fact exist and is proper where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, establish no genuine issue of material fact exist and the moving party deserves judgment as a matter of law. *O'Connell v. Turner Construction Co.*, 409 Ill. App. 3d 819, 822 (2011) (quoting *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996)).

¶ 30       When reviewing a trial court's grant of summary judgment *de novo*, we are "limited to deciding whether the [trial] court correctly concluded that no genuine issue of material fact had been raised and, if none was raised, whether judgment as a matter of law was appropriate." *Chicago Transit Authority v. Clear Channel Outdoor, Inc.*, 366 Ill. App. 3d 315, 323 (2006) (citing *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 333 (2005)). To qualify as a "genuine" issue, there must be evidence to support the position of the nonmoving party. *N.W. v. Amalgamated Trust & Savings Bank*, 196 Ill. App. 3d 1066, 1075 (1990). In making a determination as to whether a genuine issue of material fact exists, we "must construe the evidence strictly against the movant and liberally in favor of the opponent." *Chicago Transit Authority*, 366 Ill. App. 3d at 323 (citing *William Blair & Co.*, 358 Ill. App. 3d at 333).

¶ 31       DeMarzo contends the trial court erred in denying his motion for partial summary judgment because those portions of Patricia's will bequeathing certain gifts to Harris are against the public policy of Illinois, as defined by Illinois Rule of Professional Conduct 1.8(c), which provides in part:

> "A lawyer shall not *** prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client." Ill. R. Prof. Conduct (2010) R. 1.8(c) (eff. Jan. 1, 2010).

¶ 32       DeMarzo asserts that Rule 1.8(c) is indicative of public policy and that Harris violated the Rule and the policy behind it by writing Patricia's will and giving himself a substantial portion of her estate. DeMarzo's argument is primarily premised on the conversation between Patricia and Harris, which the trial court properly excluded as hearsay. Absent evidence that Harris wrote Patricia's will or improperly influenced her to bequeath most of her estate to him, no genuine issue of material fact exists showing Harris violated Rule 1.8(c) or Illinois public policy.

¶ 33    We note that DeMarzo asserts that Patricia told Panagakis on other occasions that Harris had prepared her will and that she wanted to change it. Absent a transcript or bystander's report from the trial court proceedings, we are unable to determine if this was raised below. A failure to do so precludes our addressing it. *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 59 (arguments raised for first time on appeal are waived). Even assuming DeMarzo did try to raise these conversations before the trial court, they would likely have been barred as hearsay–out-of-court statements offered to prove the truth of the matter asserted, namely, that Harris prepared Patricia's will or exercised undue influence over her. (As for any contention that Patricia wanted to change her will, there is no evidence suggesting she tried to do so during the five years between the date she signed it and the date she died.)

¶ 34    Lastly, DeMarzo contends the trial court erred in granting Harris' motion for summary judgment. He asserts that even excluding the conversation between Patricia and Panagakis, a genuine issue of material fact remains regarding whether Harris prepared Patricia's will or exercised undue influence over her. To support his argument, DeMarzo cites Harris' inconsistent testimony, noting that at the hearing on the formal proof of will and during his deposition, he stated both that Patricia told him she prepared the will and that she did not tell him she wrote it but that he assumed she did. DeMarzo also asserts there is a genuine issue of material fact as to whether Harris was acting as Patricia's attorney and her fiduciary by telling her that her estate would go to DeMarzo if she died without a will and as to what role Harris played in helping Patricia get her will notarized.

¶ 35    As noted, absent the alleged conversation between Patricia and Panagakis, which the trial court properly excluded, DeMarzo presents no evidence showing that Harris drafted Patricia's will or unduly influenced her in making her bequests. Harris' inconsistent testimony does not raise a genuine issue of material fact that he played any role in drafting her will. Further, although DeMarzo correctly asserts that it would be improper for Harris to draft a will bequeathing to himself part of her estate, because there is no evidence that he did so, the trial court properly granted Harris' motion for summary judgment.

¶ 36                                          CONCLUSION

¶ 37    The trial court correctly excluded as hearsay the conversation between Patricia and Panagakis. Absent evidence of a genuine issue of material fact that Harris prepared Patricia's will or unduly influenced her, the trial court did not err in granting summary judgment in Harris' favor and dismissing the petition to contest the will.

¶ 38    Affirmed.